Liggett & Myers Tobacco Co. v. Sam. Reid Tobacco Co.

LIGGETT & MYERS TOBACCO COMPANY, *Appellant*, v. SAM. REID TOBACCO COMPANY.

DIVISION ONE.

1. **Trade-Marks.** A person has a right to the exclusive use of marks, forms or symbols appropriated by him for the purpose of indicating the true origin or ownership of an article manufactured by him.

2. ———. Such designs or symbols are, however, not to be used for the simple purpose of naming or describing the quality of the goods.

3. ———: INFRINGEMENT: INJUNCTION. One who has appropriated a trade-mark has a property right in it which will be protected against infringement by injunction.

4. ———: CASE STATED. Plaintiff had, for many years, made tobacco, to each plug of which it attached six five-pointed stars made of tin with a hole in the center. After its tobacco had become well known as the "Star" brand, defendant put on the market a "Buzz-saw" tobacco to which is attached a tin symbol of the same size as the plaintiff's with eight points, slightly inclined to the right, a hole in the center and the words "Buzz" dimly impressed on the surface. It is attached to the plug the same as the star of the plaintiff. *Held* that the "Buzz-saw" symbol was an infringement of plaintiffs' trade-mark and that its use should be enjoined.

*Appeal from Buchanan Circuit Court.*—HON. O. M. SPENCER, Judge.

REVERSED.

*Paul Bakewell* and *R. A. Bakewell* for appellant.

(1) It is for the court to compare the marks in a trade-mark case or case of unfair business competition. If to the eye of the court, there is such a resemblance as must have been intended to, or would probably, deceive the ordinary purchaser, an injunction will be

granted. Take the mark first adopted; look at the supposed infringement; put yourself in the place of the ordinary retail purchaser, might you probably, with the care ordinarily used in purchases so insignificant in value on each sale, take the last for the first, not seeing them side by side? If so, the infringement is made out. *Cook v. Starkweather*, 13 Abb. Pr. R. (N. S.) 402; *Edelsten v. Vick*, 11 Hare, 78; 23 Eng. L. & Eq. 51; *Avery v. Meikle*, 23 Alb. L. J. 203; *Taylor v. Taylor*, 23 L. J. Ch. (N. S.) 255; *Lockwood v. Bostwick*, 2 Daly, 251; *McCann v. Anthony*, 21 Mo. App. 23; *Sawyer v. Horn*, 4 Hughes, 239; *Landreth v. Landreth* (1884), 29 Pat. Off. Gaz., p. 1131; *Cope v. Evans*, 18 Eq. Cas. Law Rep. 138. (2) A court may infer a bad intention from a comparison of the two marks, and say that it was not by accident that the coincidence of the two designs was effected. Brown on Trade-Marks [2 Ed.] sec. 386; *Cook v. Starkweather*, 13 Abb. P. 392; *Coffee v. Brunton*, 5 McLane, 256; *Cope v. Evans*, 18 Eq. Cas. Law Rep. 138. (3) The imitation of the original trade-mark need not be exact or perfect. If the court sees that complainant's trade-mark is simulated in such a manner as probably to deceive customers or patrons of his trade or business, the piracy should at once be checked by injunction. The infringement may embrace variations that imitation would not at once disclose. *Filley v. Fassett*, 44 Mo. 168; *Cook v. Starkweather*, 13 Abb. Pr. (N. S.) 402; *Clark v. Clark*, 25 Barb. 79; *Partridge v. Meneck*, How. App. Case, 559; *Burnett v. Phalon*, 5 Abb. Pr. (N. S.) 221. (4) It is not material that the marks are not parallel, nor that seen side by side the two labels would not deceive the ordinary retail purchaser. Brown on Trade-Marks [2 Ed.] secs. 223-4, 267-8, 397; *McLean v. Fleming*, 96 U. S. 245-6; *Gorham Co. v. White*, 14 Wall. 511; *Cook v. Starkweather*, 13 Abb. Pr. (N. S.) 402; *Clark v. Clark*, 25 Barb. 79. (5) Imitators frequently drop part of the surroundings, but, if the peculiar device is so copied as

to manifest a design of misleading the public, the omission or variation ought to be wholly disregarded. Brown on Trade-Marks [2 Ed.] secs. 267. 268, 397; *Walter v. Crowley*, 3 Blatchf. 440–7; *Mfg. Co. v. Trainer*, 101 U. S. 64; *Colman v. Crump*, 70 N. Y. 578; *Cook v. Starkweather*, 13 Abb. Pr. (N. S.) 402. (6) It is not necessary to prove actual fraudulent intent. Intent has no weight in these cases of infringement. Brown on Trade-Marks, sec. 188; *Wellington v. Fox*, 3 My. and Cr. 338; *Matrell v. Flanagan*, 2 Abb. Pr. R. (N. S.) 459; *Witherspoon v. Currie*, L. R. 508; *Mfg. Co. v. Spear*, 2 Sandf. 599; *Cook v. Starkweather*, *supra;* Story, Eq., sec. 951*n;* High, Injunc., secs. 676–9, 675*n*, 678*n; Cope v. Evans*, L. R. 18 Eq. Cases, 138; *Edelston v. Edelston*, L. R. 14 Eq. 542. (7) It is unimportant on the question of right to relief by injunction, whether the manufacture of defendant is of equal or even inferior quality. *Cook v. Starkweather*, *supra; Taylor v. Carpenter*, 11 Paige, 298. (8) But where the manufacture of the infringer is of inferior quality, the injury to the reputation of plaintiff's busi-· ness by palming off an inferior article as his is to be considered. (9) The transfer of business rights by sale or otherwise passes the trade-mark right. The fact that plaintiffs were originally an ordinary copartnership and became afterwards incorporated does not impair their right or affect its continuity. *Cook v. Starkweather*, 13 Abb. Pr. (N. S.) 402. (10) The fact that defendant has offered no evidence whatever raises a strong inference of intent to deceive on his part. But this may be conclusively inferred from the resemblance of the marks, where no other purpose is affirmatively shown. *Adlerton v. Vick*, 33 Eng. L. & Ch. 51; *Taylor v. Taylor*, 23 L. J. (N. S.) Ch. 255. (11) In the case at bar, actual deception is shown. But this is not necessary where the simulated label is likely to deceive. *Tobacco Co. v. Hynes*, 20 Fed. Rep. 883; *McCann v. Anthony*, 21 Mo. App. 23; *Filley v. Fassett*, 44 Mo. 173; High,

Injunc. 675, 691n; *Moorman v. Hoge*, 2 Sawyer, 78; *Mfg. Co. v. Luderman*, 32 Pat. Off. Gaz., No. 2 (January, 1885); *Cook v. Starkweather, supra.* (12) Plaintiff need not show a registered trade-mark. The right is a common-law right, altogether independent of the statute. *McLean v. Fleming*, 96 U. S. 248; *Lee v. Haley*, L. R. 5 Ch. 155; *Filley v. Fassett*, 44 Mo. 168; *Graham v. Plate*, 40 Cal. 593. (13) Courts of equity will with great jealousy protect a manufacturer or trader from unlawful competition in his business, and will override all technicalities to reach justice in such a case. *Perry v. Truefit*, 6 Beav. 66; *Sexio v. Provezend*, L. R. 1 Ch. 192; *Avery & Sons v. Meickle*, Pat. Off. Gaz., No. of June 3, 1884, p. 1027; 23 Alb. L. J. 203; *Gamble v. Stephenson*, 10 Mo. App. 581.

*Smith & Harrison* also for appellants.

(1) The symbol of a "star," as used by the plaintiff to designate, make known and distinguish plaintiff's "star tobacco," is a lawful trade-mark, and should be protected from piracy. A trade-mark is any name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant to designate the goods he manufactures or sells, and to distinguish them from the goods of another. *Newman v. Alvord*, 51 N. Y. 189; Upton's Trade-Marks, 9; 6 Wait's Actions & Defenses, 21; *Shaver v. Shaver*, 54 Iowa, 208–210. (2) "The imitation of an original trade-mark need not be exact or perfect. It may be limited and partial. Nor is it requisite that the whole should be pirated; nor is it necessary to show that anyone has in fact been deceived, or that the party complained of made the goods. Nor is it necessary to prove intentional fraud. If the court sees that the complainant's trade-marks are simulated in such a manner as probably to deceive customers of his trade or business, the piracy should be checked at once by injunction." *Filley v. Fasset*, 44 Mo. 168;

*McCartney v. Garnhart*, 45 Mo. 593 ; *Conrad v. Brewing Co.*, 8 Mo. App. 277 ; *Gamble v. Stephenson*, 10 Mo. App. 581 ; *Saunders v. Jacobs*, 20 Mo. App. 96 ; *McCann v. Anthony*, 21 Mo. App. 83 ; *Fish Co. v. Wooster*, 28 Mo. App. 408-419. (3) The symbol of a "star" affixed upon the tobacco of plaintiff, as shown, points by association in the trade distinctively to the origin of the tobacco to which it is applied, as the plaintiff's tobacco. *Estes v. Leslie*, 29 Fed. Rep. 91 ; *American Co. v. Anthony*, 5 Atl. Rep. 626 ; *Mfg. Co. v. Trainer*, 101 U. S. 54 ; *Union v. Conhaim*, 41 N. W. Rep. 943. (4) The legal test is not whether a wary or cautious man, or one skilled in that particular business, would be likely to be misled by the imitation—but whether it is such as would likely deceive the ordinary purchaser, purchasing with ordinary caution, or the careless and unwary. High on Injunction [ 3 Ed.] secs. 1088-1089 ; Sebastian on Law of Trade-Marks [ 2 Ed.] 121, and cases cited ; *Sexio v. Provezend*, L. R. 1 Ch. App. Cases, 192 ; *Williams v. Spence*, 25 How. Pr. Rep. 366 ; *Celluloid Co. v. Mfg. Co.*, 32 Fed. Rep. 94 ; *Glenny v. Smith*, 11 Jur. ( N. S.) 964 ; per Lord CHELMSFORD in *Witherspoon v. Currie*, L. R. 5 H. L. 508 ; *In re Farina*, 27 W. Rep. 456 ; *Barrows v. Knight*, 6 R. I. 434 ; *McLean v. Fleming*, 96 U. S. 245 ; *Gorham Co. v. White*, 14 Wall. 511 ; *Godillot v. Harris*, 81 N. Y. 263 ; *Coleman v. Crump*, 70 N. Y. 573 ; *Leidersdorf v. Flint*, 50 Wis. 401 ; *Clark v. Clark*, 25 Barb. 79, *supra ;* *Brooklyn v. Masury*, 25 Barb. 416, *supra.* (5) Nor is the legal test, whether, seen side by side, the two symbols would deceive the ordinary purchaser into mistaking the one for the other, but whether the defendant's tobacco, stamped with its mark and separately exposed for sale would probably be mistaken by purchasers for the plaintiff's tobacco to which its "star" trade-mark is affixed. High on Inj. [ 3 Ed.] sec. 1088 ; *Wilson v. Crowley*, 3 Blatch. 440, *supra ;* *Lockwood v. Bostwick*, 2 Daly, 521 ; *Fertilizer Co. v. Woodside*, 1 Hughes C. C. U.

S. 115; *Mfg. Co. v. Leudeling*, 22 Fed. Rep. 823; *Sexio v. Provezend*, L. R. 1 Chan. App. 192; *Cook v. Stark-weather*, 13 Abb. Pr. Rep. (N. S.) 392. (6) The jurisdiction of the courts in trade-mark cases seemed originally to rest on fraud upon the part of defendant; but the test is not whether the offending party intended to commit the fraud, to deceive; but it consists in actual deception or the creation of a possibility of a deception, independent of any actual fraudulent intent. *Delaware v. Clark*, 7 Blatch. 112; *Croft v. Day*, 7 Beav. 84; *Curtis v. Bryan*, 2 Daly, 312; *Messerole v. Tynberg*, 36 How. Pr. Rep. 14; *Lockwood v. Bostwick*, 2 Daly, 521; *McCann v. Anthony*, 21 Mo. App. 83, *loc. cit.* 90; *Coffeen v. Brunton*, 4 McLean, 516. (7) Although the wholesalers or retailers, to whom the defendant may have sold the tobaccos stamped with its mark, may not have been deceived, yet, if the consumer was deceived, the right of action exists and the permanent injunction should be granted. *Sykes v. Sykes*, 3 B. and Cr. 541; *Farina v. Silverlock*, 1 K. & J. 509; *Chappel v. Davidson*, 2 K. & J. 123; *Rose v. Loftus*, 47 L. J. Ch. 576; *Mfg. Co. v. Loog*, 18 Ch. D. 412; *Crucible Co. v. Guggenheim*, 2 Brewster, 321–325; *Mfg. Co. v. Wilson*, 2 Ch. D. 434.

*M. A. Reed* and *Stuart & Carkner* for respondent.

BLACK, J.—This suit was instituted in the Buchanan circuit court to enjoin the defendant from manufacturing, selling or offering for sale plug tobacco having affixed thereto the mark of a star or a mark resembling a star in imitation of plaintiff's trade-mark. On final hearing of the cause the circuit court dissolved the temporary injunction, gave judgment for defendant, and also assessed damages on the injunction bond and gave judgment therefor in favor of the defendant.

From the proofs and admissions made at the hearing it appears the firm of Liggett & Myers had been

for many years prior to January, 1878, engaged in the manufacture and sale of plug tobacco at the city of St. Louis in this state. The plaintiff corporation was organized under the laws of this state at the last-mentioned date, and became the successor of the firm of Liggett & Myers, and as such successor acquired the business, good will and trade-marks of the old firm. The firm of Liggett & Myers was the first to adopt a star as a trade-mark. It is a symbol in the form of a five-pointed star made of tin, with a circular hole cut through the center. Six of these stars are attached to each plug of tobacco. This brand manufactured by the plaintiff is well and favorably known and has a large sale throughout the United States, and it is called the " Star tobacco."

The defendant, a corporation organized under the laws of this state, began the manufacture of plug tobacco at St. Joseph in December, 1888, long after the plaintiff's trade-mark had become well known to the trade. The defendant adopted a device as a trade-mark of which complaint is made. It is a symbol of the same size as that of the plaintiff, made of tin, with eight points slightly inclined to the right, with a hole in the center, and has the word "Buzz" dimly impressed upon the surface. It is attached to the plugs the same as the star of the plaintiff.

The defendant placed its tobacco upon the market calling it the "Buzz-saw" at a few cents per pound less than the price at which plaintiff sold its brand "Star," and as a result there was a very great depreciation in sales made by plaintiff for five or six months. While experts in the tobacco business would readily detect the difference between the two brands, still it is apparent from an inspection of the tags that an ordinary consumer would not notice the difference. Indeed, there is a vast amount of evidence in the case showing that this " Buzz-saw was often sold as " Star tobacco," and in

many instances the consumer purchased and paid for defendant's brand, supposing and believing at the time that he got what he called for, namely, "Star tobacco."

The general principles of the law concerning trade-marks are well settled. A person has a right to the exclusive use of marks, forms or symbols appropriated by him for the purpose of pointing out the true origin or ownership of the article manufactured by him. The limitation upon this right is that such designs or words may not be used for the simple purpose of naming or describing the quality of the goods; for to permit that would be to foster a monopoly, while the great purpose of the law of trade-marks is to protect the owner in the exclusive use of his device which distinguishes his product from other similar articles, and to protect the public against fraud and deception. Any contrivance, design, device, name or symbol may be used as a trade-mark for the purpose of pointing out the true source and origin of the goods to which it is affixed. Under some circumstances the name of a place may be used as a trade-mark.

The law is also well settled that one who has appropriated a trade-mark, to distinguish his goods from other similar goods, has a property right in it, a right that will be protected by injunction against the infringing party. To entitle the plaintiff to a perpetual injunction, the imitation need not be exact or perfect. To constitute an infringement it will be sufficient to show that the imitation is such as would be likely to mislead one in the ordinary course of purchasing the goods and lead him to suppose or believe that he was purchasing the genuine article. It is not necessary to show that any one has in point of fact been deceived, nor is it, at this day, necessary to show intentional fraud. The following cases and many others assert some one or all of the foregoing principles of law : *Filley v. Fassett*, 44 Mo. 168 ; *Mfg. Co. v. Trainer*, 101 U. S. 51 ; *Newman v. Alvord*, 51 N. Y. 189 ; *McLean v. Fleming*, 96 U. S. 245 ;

*McCartney v. Garnhart*, 45 Mo. 593; *Hostetter v. Vowinkle*, 1 Dillon, 330; *Shaver v. Shaver*, 54 Iowa, 208.

Applying the foregoing principles of law to the case in hand there can be no doubt but the defendant should be perpetually enjoined from using the so-called " Buzz-saw" device. There is, it is true, some difference between that symbol and the plaintiff's star, but the difference is slight and consists in eight instead of five points, and the eight points incline slightly to the right. At a distance of a few feet they would be readily taken to be one and the same mark. The difference is colorable only, so much so as to indicate even guilty knowledge and a deceptive purpose. Besides this the proof is clear that consumers have been and are often deceived and led to believe that this so-called " Buzz-saw " is genuine " Star."

The defendant's device is but an evasive effort to cover up a wrongful use of the plaintiff's trade-mark. This trade-mark has become of great value to the plaintiff by reason of its long use and the continued excellence of the article to which it is affixed, and the plaintiff is entitled to the exclusive use of it. The defendant has made no appearance in this court and we are at a loss to know upon what ground the court refused the relief prayed for.

The judgment is reversed, and a perpetual injunction will be entered here to the full extent of the relief prayed for in the petition. All concur.