## BAMBERGER BROADCASTING SERVICE, Inc., v. ORLOFF.

District Court, S. D. New York.
March 3, 1942.

Leon Lauterstein, of New York City (Emanuel Dannett and Sheldon Kaplan, both of New York City, of counsel), for plaintiff.

David Schwartz, of New York City (R. B. Shemitz, of New York City, of counsel), for defendant.

HULBERT, District Judge.

Plaintiff operates the radio broadcasting station WOR and defendant conducts a retail printing establishment at 108 University Place, New York, N. Y., under the registered assumed trade name of W.O.R. Printing Company.

Plaintiff seeks a decree (1) enjoining defendant

(a) from using the letters W.O.R., or any colorable imitation, or like letters, name, or word, in any way in connection with his business or in connection with the merchandise sold by him, and

(b) from using any letters, name or word which may be calculated, or having a tendency, to cause defendant's business to be confused with plaintiff's business, and

(2) requiring the defendant to account to plaintiff for all profits realized by him and all damages sustained by plaintiff on account of the unfair competition and infringement alleged in the complaint.

The case was tried by the Court without a jury.

There is no substantial dispute as to the facts, which are found as follows:

1. L. Bamberger & Co. is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, and operates and has operated for many years, a department store in the City of Newark in that State.

2. In or about the month of February, 1922, L. Bamberger & Co. commenced the operation of a radio broadcasting station in Newark, New Jersey, under the call-letters WOR, and continuously operated said broadcasting station under said call-letters, which were assigned to it by the predecessor of the present Federal Communications Commission, until on or about January 30, 1930.

3. Plaintiff is and has been since January 30, 1930, a corporation organized and existing under and by virtue of the laws of the State of New Jersey, and is a wholly-owned subsidiary of L. Bamberger & Co.

4. The defendant is a citizen of the State of New York and resides and has his place of business within the jurisdiction of this court.

5. The amount in controversy is in excess of $3,000, exclusive of interest and costs.

6. That on or about the 30th day of January, 1930, L. Bamberger & Co. sold, assigned, transferred and conveyed to the plaintiff all its right, title and interest in and to said broadcasting station and to the call-letters WOR, and the plaintiff has ever since operated and continues to operate said broadcasting station under said call-letters WOR pursuant to successive licenses issued by the Federal Communications Commission.

7. The plaintiff's broadcasting station WOR is operated daily and, geographically,

reaches listeners having radio reception equipment in a large area of the country along the Atlantic Coast, including the States of New Jersey, New York, Maryland, Pennsylvania, Delaware, Connecticut, Rhode Island, Massachusetts, and Maine. The plaintiff broadcasts commercial and sustaining programs, that is, it advertises the products of some 200 sponsors and intersperses music and other forms of entertainment to make its programs interesting and attractive. Each program so broadcast is preceded and followed by the announcement of the call-letters WOR; such programs are listed under said call-letters in approximately 200 newspapers published in 135 cities in the United States.

8. Since 1934 plaintiff has been affiliated with the Mutual Broadcasting System, made up of 175 broadcasting stations (190 at the time of trial) which broadcast in various communities throughout the United States under their designated call-letters, and whose programs reach large audiences, and many of the plaintiff's programs are carried over these affiliated stations as far as Hawaii and over the Canadian Broadcasting Service into Canada.

9. Plaintiff has established the policy of not permitting any commercial sponsor to make any false or unwarranted claims for any products or to broadcast any advertising matter which might prove injurious or prejudicial to public interest. In furtherance of this policy, plaintiff makes careful investigation concerning the nature of the product to be advertised over its station and requires commercial sponsors to submit copies of all scripts prior to each and every broadcast. Commercial sponsors, whose products and advertising material are in conformity with the aforementioned policy of plaintiff, advertise and sell a large variety of articles and merchandise over the facilities of Station WOR, including products of the same descriptive character as those sold by the defendant. Such commercial sponsors, in many instances, widely advertise forthcoming broadcasts over Station WOR.

10. Plaintiff has been and is duly licensed by the Federal Communications Commission to operate a transmitter for the experimental transmission of facsimile signals, and pursuant to the license so granted plaintiff has transmitted and continues to transmit a facsimile bulletin bearing the title "WOR Radio Print", a specimen of which is annexed to the complaint, identified as Exhibit A.

11. During the past 5 years plaintiff has spent approximately a quarter of a million dollars for advertising; its annual expenditures for operation 5 years ago was $300,000, and at the time of trial $500,000, and it has received practically daily a large number of communications from listeners commending the quality of its programs (See compilation, Ex. 10).

12. About the year 1923 the defendant engaged in the printing business under the name of Orloff Press. He discontinued that business about 3 years later but resumed the printing business about 4 or 5 years ago under the name of W.O.R. Printing Company and has continued that business up to the time of trial.

13. In October, 1937, the defendant filed a certificate in the office of the Clerk of the County of New York, State of New York, certifying that he was conducting such business under the name of "W.O.R. Printing Company" and no other person is interested in said business.

14. The defendant does general job printing such as letterheads, billheads, envelopes, cards, placards and handbills.

15. The defendant has owned a radio receiving set for at least 15 years, and during that time frequently listened in on the programs broadcasted over WOR, including baseball games and other sports, as well as the general run of plaintiff's daily programs.

16. The defendant has not given a satisfactory explanation for his choice and use of the letters W.O.R., which were adopted and used by him with full knowledge of the wide reputation of their use in connection with the business of the plaintiff, and for the purpose of appropriating plaintiff's reputation and good-will to give a standing to the defendant's business and the salability to his goods.

17. Defendant's use of the letters W.O.R. is unauthorized by plaintiff and began long after the letters WOR had acquired a secondary meaning identifying plaintiff's business.

18. Plaintiff promptly demanded the discontinuance of the use of the letters W.O.R. but defendant has not complied with such request.

19. The type of defendant's business is such that the reputation which it develops

will differ materially from that of the plaintiff's broadcasting operations.

20. The acts of the defendant will cause the plaintiff irreparable damages unless restrained.

The doctrine of unfair competition is relatively of recent origin and the courts have come to recognize that the use of a trade name by a non-competitor may not only destroy its identifying qualities but also the normal potentialities of expansion.

In a suit for unfair competition it is sufficient to show that plaintiff's goodwill is likely to be endangered by the defendant's use of plaintiff's name or trademark. It is no longer necessary to allege and prove direct competition between the products of each. Great Atlantic & Pacific Co. v. A. & P. Radio Stores, D.C., 20 F.Supp. 703 (to which the facts at bar are strikingly comparable), wherein the court granted an injunction restraining the defendant (whose incorporators were Aronberg and Podolsky) from using the letters A and P in its corporate name and in its business, although plaintiff was engaged in selling groceries whereas the defendants sold radios, washing machines and electric refrigerators. See, also, Stork Restaurant, Inc., v. Marcus et al., D.C., 36 F.Supp. 90, 91, which Judge Clark expressly distinguishes from all of the other cases cited by him on the question of jurisdiction in Pure Oil Co. v. Puritan Oil Co., D.C., 39 F.Supp. 68, 73 (footnote 2).

There is, however, a question raised by the defendant, which has required special consideration.

He urges that the plaintiff as a licensee has no proprietary interest in the letters WOR. This contention is wholly without merit. In City of New York v. Federal Radio Commission, 59 App.D.C. 129, 36 F.2d 115, 116, it was contended by the municipality that it had acquired a property right to operate its station (WNYC) at full time, and the restriction imposed by the order of the Commission amounted to the taking of a property right without due process of law. The Court of Appeals of the District of Columbia rejected this proposal (certiorari denied, 281 U.S. 729, 50 S.Ct. 246, 74 L.Ed. 1146) and said:

"The * * * broadcasting of radio communications is a species of interstate commerce, and as such is subject to federal regulation [citing cases]. * * * The appellant's rights, like those of other stations, are made subject to this authority by the statute, and also by the express terms of its license."

Of course, if the plaintiff's license should be terminated, or even suspended, its goodwill in the letters WOR might become worthless, but that is so with respect to any business operated under a license. So long as the licensee conducts any business his property rights are entitled to protection, and I think the presumption is in favor of the plaintiff that it will continue its business so long as it conforms to the requirements of the licensor, and when it has committed a breach it has impaired the value of its good-will by its own act.

By the Radio Act of 1927, Chap. 169, effective Feb. 23, 1927, 44 Stat.L. page 1162, 47 U.S.C.A. § 81 et seq., Congress clearly intended: "to regulate all forms of interstate and foreign radio transmissions and communications within the United States, * * * to maintain the control of the United States over all the channels of interstate and foreign radio transmission; and to provide for the use of such channels, *but not the ownership thereof,* * * * and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license". (Italics supplied.)

Broadcasting, except under and in accordance with the Act and a license issued pursuant thereto, was prohibited.

The provisions of the Radio Act of 1927 were repealed or superseded by the Act creating the Federal Communications Commission, June 19, 1934, Chap. 652, 48 Stat. 1064, as amended May 20, 1937, Chap. 229, 50 Stat. 189, 47 U.S.C.A. § 151 et seq.

Among the powers and duties of the Commission therein stated are to:

"(a) Classify radio stations;
* * *
"(g) Study new uses for radio, provide for experimental uses for frequencies, and generally encourage the larger and more effective use of radio in the public interest." Title 47 U.S.C.A. § 303.

The latter provision is a significant factor in this case because, while the defendant points out that the "WOR Radio Print" was not issued by plaintiff until the year 1938, i.e., subsequent to the filing of the defendant's certificate of doing business as W.O.R. Printing Company, it warrants the possibility of the expansion of the plain-

tiff's business in accordance with the asserted policy of Congress, and, of course, the plaintiff is restricted in the operation of its business by law and the rules and regulations adopted and promulgated by the Commission pursuant thereto. So that in the development by the defendant of his business, which is unlimited except perhaps by the extent of his ability to increase his capital investment, the defendant might well continue to engage in a field to which the plaintiff is restrictively limited in its future development.

### Conclusions of Law.

1. This Court has jurisdiction over the subject matter of this action.

2. The plaintiff corporation is entitled to use the letters WOR in the conduct of its broadcasting activities,

3. Plaintiff is entitled to protection against trade practices which do or are likely to infringe unfairly upon the plaintiff's use of said letters WOR.

4. The defendant in using the letters W.O.R. previously adopted by the plaintiff is guilty of an unfair trade act.

5. Plaintiff is entitled to an injunction restraining the defendant from using the letters W.O.R. in conducting his printing business.

6. Each of the parties shall bear its and his own costs respectively.

7. Submit decree in accordance with these findings and conclusions.