**PEOPLES GIN CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9657.

Circuit Court of Appeals, Fifth Circuit.

March 14, 1941.

Nelson E. Taylor, of Greenwood, Miss., for petitioner.

Michael H. Cardozo, IV, and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Irving M. Tullar, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The petitioner, Peoples Gin Company, Inc., a Mississippi corporation, was organized in July, 1933, for the purpose of carrying on a public cotton ginning business. The stock of the corporation was owned by six farmers, each of whom held fifteen shares. The six stockholders and other cotton farmers patronized the gin, and in the 1933 ginning season the company ginned 2,652 bales of cotton. Of this number 1,794 bales were ginned for stockholders, and 858 bales were ginned for other customers. Without distinction the stockholder and non-stockholder patrons were charged the same ginning fees per bale for the ginning of cotton. The company realized a profit of $5,721.24 from the ginning of the 2,652 bales of cotton in the 1933 season.

On August 9, 1933, shortly after the organization of the Peoples Gin Company, a resolution was adopted providing that a ten per cent dividend should be paid by the corporation before any profits should be "prorated on a baleage basis". On December 8, 1933, after the ginning season had closed, the stockholders held a meeting and adopted by-laws providing that each stockholder should pay the regular ginning fee for the ginning of his cotton; that at the close of the ginning season all profits of the corporation were to be divided among the stockholders in the proportion which the number of bales ginned for them bore to the total number of bales ginned by the company during that season; and that the profits derived from ginnings for non-stockholders were to constitute company profits which were to be divided in proportion to the number of shares held by individual stockholders, "or credited to the surplus and undivided profits account". In May, 1934, before the close of the company's fiscal year, the by-laws were further amended to provide that each year the stockholders would be reimbursed for any amount paid to the ginnery "in excess of the actual cost of ginning his cotton".

It was determined by the gin company that its profit from the ginning of 1,794 bales of cotton for stockholders was $3,684.70, and on January 15, 1934, this amount was prorated and distributed to the six stockholders on the basis of the number of bales ginned for each of them during the

ginning season. In its income tax return for the fiscal year ending July 31, 1934, the taxpayer deducted this sum of $3,684.-70 from its gross income as a "patronage dividend". The commissioner disallowed the deduction and determined a deficiency in income and excess profits taxes for the year. The taxpayer appealed and the Board of Tax Appeals sustained the commissioner's determination of deficiency. Peoples Gin Company, Inc. v. Commissioner, 41 B.T.A. 343.

The petitioner contends here as it did before the Board that the payment of $3,-684.70 to its stockholders was a "patronage dividend", a rebate or refund of excess ginning charges, and that this sum should have been allowed as a proper deduction from its gross income. In support of this contention it relies upon Treasury Ruling A.R.R. 6976, Cumulative Bulletin June, 1924, P. 287; Uniform Printing & Supply Co. v. Commissioner, 7 Cir., 88 F. 2d 75, 109 A.L.R. 966; Fruit Growers' Supply Co. v. Commissioner, 9 Cir., 56 F.2d 90; Riverdale Co-op. Creamery Co. v. Commissioner, 9 Cir., 48 F.2d 711.

This case is different from the cases relied upon by the petitioner. In those cases where the deduction was allowed the obligation to make rebates or refunds was in existence before the profits were earned.

The resolution of August 9, 1933, relative to ten per cent dividend payments did not bind the gin company to make rebates or refunds to stockholders on a baleage basis. Until the adoption of the resolution of December 8, 1933, there was nothing in the corporation by-laws providing for a refund of excess charges to stockholder patrons. The distribution to stockholders which was made on January 15, 1934, was pursuant to the by-laws of December, 1933, which by-laws had been adopted subsequent to the earnings of the profits by the ginnery. When this income was received by the corporation there was no obligation to make refunds or rebates to stockholders. The profits from ginnings for stockholders, therefore, became a part of the gross income of the taxpayer, and the character of this income for tax purposes was not changed by the adoption of subsequent resolutions and by-laws. Cf. Fruit Growers Supply Co. v. Commissioner, 9 Cir., 56 F.2d 90; Brown v. Helvering, 291 U.S. 193, 199, 54 S.Ct. 356, 78 L.Ed. 725; North

American Oil Co. v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197.

The facts of this case make it clear that the distribution to stockholders was nothing more than a dividend paid out of profits of the corporation. Cleveland Shopping News Co. v. Routzahn, 6 Cir., 89 F.2d 902; Lincoln Nat. Bank v. Burnet, 61 App.D.C. 54, 63 F.2d 131; Hudson v. Commissioner, 6 Cir., 99 F.2d 630.

The Board properly held that the distributed sum of $3,684.70 should be included in the gross income of the petitioner. The decision of the Board is affirmed.